AVID IDENTIFICATION SYSTEMS, INC., Plaintiff–Appellant,

v.

The CRYSTAL IMPORT CORPORATION, Datamars SA and Datamars, Inc., Defendants.

Nos. 2009–1216, 2009–1254.

United States Court of Appeals, Federal Circuit.

April 27, 2010.

John W. Thornburgh, Fish & Richardson P.C., of San Diego, CA, for plaintiff-appellant. With him on the brief were Juanita R. Brooks, Roger A. Denning, and Michael A. Amon.

K.T. Cherian, Howrey LLP, of San Francisco, CA, for amicus curiae Allflex USA, Inc. With him on the brief were Ronald S. Wynn; and Richard L. Stanley, of Houston, TX.

Before MAYER, LINN, and PROST, Circuit Judges.

Opinion for the Court filed by Circuit Judge PROST. Opinion concurring-in-part and dissenting-in-part filed by Circuit Judge LINN.

PROST, Circuit Judge.

Avid Identification Systems Inc. ("Avid") brought suit against Datamars SA and its subsidiary Crystal Import Corporation (collectively "Datamars") alleging infringement of Avid's U.S. Patent No. 5,235,326 ("the '326 patent") directed to a multimode radio-frequency identification system for reading encoded biocompatible chips. The patent was found valid and infringed, but held to be unenforceable for inequitable conduct. This appeal challenges the district court's finding of inequitable conduct. In reviewing the district court's finding, we address which individuals are "substantively involved" in the preparation or prosecution of a patent application and thus owe a duty of candor and good faith to the Patent and Trademark Office under 37 C.F.R. § 1.56. We affirm the finding of the district court.

## BACKGROUND

Avid is a small, closely held company that designs and markets biocompatible radio frequency identification chips for implantation in animals. Avid markets its chips to pet owners as a way of increasing the chances that an estranged companion animal will be identified and reunited with its family. Avid markets devices for reading its chips to animal hospitals and shelters.

Avid's founder and president, veterinarian Dr. Hannis Stoddard, testified that he decided to form the Avid corporation after visiting an animal shelter to reclaim his own lost dog. He explained that most animals at the shelter were clearly lost pets, but there was no way to find their homes. Dr. Stoddard made it his mission

to implement a better system of dealing with the identification and processing of recovered animals. He and a colleague, Peter Troesch, formed Avid for the purpose of carrying out Dr. Stoddard's mission.

When the company first started, Avid purchased unencrypted identification chips from a supplier, relabeled them, and sold them as a marketer and distributor. The company discontinued its resale business model in around 1985 because Dr. Stoddard wanted Avid to develop its own technology. Specifically, Stoddard wanted Avid to develop a chip and reader system, where the reader could read both the unencrypted chips currently on the market as well as encrypted chips that Avid produced. Stoddard hired at least three engineers, Dr. Polish, Dr. Malm, and Mr. Beigel, to carry out this objective. By about 1990, these engineers developed an encrypted identification chip that could be read by a reader programmed with Avid's decryption code. They also developed a "multi-mode" reader that could read both Avid's encrypted chip and traditional unencrypted chips.

Dr. Stoddard demonstrated some of Avid's technology at a U.S. Livestock Committee trade show in around April of 1990. In August of 1991, Avid filed for the '326 patent on a multi-mode encrypted chip and reader system, where the reader can read both unencrypted chips and Avid's encrypted chips. The inventors named on the application were Polish, Malm, and Beigel. Dr. Malm was also listed as the prosecuting attorney. A few days before the patent application was filed, the inventors assigned their rights to Avid. Dr. Stoddard signed the small entity status affidavit filed with the patent. Avid was also pursuing European patent rights for its encrypted chip and reader system during this time. The '326 patent issued in August of 1993.

Datamars is a competitor of Avid in the companion animal identification chip market. Avid brought suit against Datamars and several other competitors in 2004 alleging infringement of its '326 patent, as well as unfair competition and false advertising claims. The other defendants settled their claims with Avid. The case against Datamars proceeded to trial and a verdict.

The jury found the '326 patent willfully infringed and not invalid, and found in favor of Avid on the unfair competition and false advertising claims. The jury awarded Avid $26,981 on the patent infringement claim and $6 million on the unfair competition claim. Following the trial, Datamars filed a motion to hold the patent unenforceable for inequitable conduct. The district court granted the motion, without trial, finding that Dr. Stoddard's trade show demonstration was material prior art under 35 U.S.C. § 102(b) and that information regarding the demonstration was withheld from the U.S. Patent and Trademark Office ("PTO") with deceptive intent. Specifically, the district court found that Dr. Stoddard owed a duty of candor to the PTO.

After this ruling on inequitable conduct, the parties entered into a settlement agreement. Pursuant to the terms of the agreement, the parties stipulated to a dismissal of all claims other than those related to the '326 patent, the payment for unfair competition was reduced to $3 million, Avid filed an unopposed motion for reconsideration of the district court's inequitable conduct decision, and Datamars agreed not to contest the standing, jurisdiction, mootness, or case and controversy of the inequitable conduct decision on appeal to this court. In the event that Avid prevailed on reversing the inequitable con-

duct determination on motion for reconsideration or on appeal to this court, Datamars agreed to pay the $26,981 previously awarded by the jury for infringement of the '326 patent.

The district court dismissed the unopposed motion for reconsideration of the inequitable conduct decision, finding that there was no case or controversy between the parties. The district court explained that the terms of the settlement agreement explicitly precluded Datamars from opposing the motion for reconsideration in any way, thus eliminating any adversity between the parties on all matters before the district court. The district court noted in its opinion that Avid argued, for the first time on reconsideration, that Dr. Stoddard did not have a duty of candor before the PTO.

Avid timely appealed the district court's determination of inequitable conduct to this court. Datamars did not file a brief in response.

## DISCUSSION

There are two issues before this court on appeal: first, whether the court has jurisdiction to decide the issue of inequitable conduct, and second, if we do have jurisdiction, whether the district court abused its discretion in holding the '326 patent unenforceable for inequitable conduct. We discuss each in turn.

### I. Case and Controversy

As a preliminary matter, we must determine whether the issue of inequitable conduct is properly before this court. The mere fact that Datamars agreed with Avid not to dispute standing, jurisdiction, mootness, and case or controversy in this appeal does not thereby give Avid standing or this court jurisdiction. Similarly, it does not create a case or controversy where one would not otherwise exist. This court must always determine for itself whether it has jurisdiction to hear the case before it, even when the parties do not raise or contest the issue. *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1342 (Fed.Cir.2001); *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 115 F.3d 962, 963 (Fed.Cir.1997).

Amicus Allflex argues that Avid's appeal is mooted by the settlement agreement between Avid and Datamars. Allflex argues that the provision of the settlement carving out the '326 patent and making the $26,981 payment contingent on the outcome of this appeal is not enough to preserve a controversy between the parties. Allflex argues that Datamars has no further interest in the disposition of this case, and that the $26,981 "side bet" is a nominal gesture in light of the $3 million in consideration to Datamars for agreeing not to oppose reconsideration below or the procedural appropriateness of the appeal.

For the reasons stated in the district court's opinion dismissing Avid's motion for reconsideration, we agree with the district court that the terms of Avid's settlement agreement with Datamars eliminated any case or controversy before the district court regarding the motion for reconsideration. The settlement agreement's limitations on Datamars's ability to oppose Avid's efforts on appeal, however, are different from the agreement's limitations on Datamars's ability oppose Avid's motion for reconsideration. As a result of these differences, there is still a live controversy between the parties on appeal.

A live controversy still exists because Datamars remained free under the settlement agreement to oppose this appeal on the merits. *See, e.g., Kimberly–Clark Corp. v. Procter & Gamble Distributing Co.*, 973 F.2d 911, 913–14 (Fed.Cir.1992). That it chose not to submit a brief does not

deprive this court of jurisdiction over the issues on appeal. Similarly, Datamars's agreement not to contest the procedural appropriateness of the appeal does not release this court from its legal obligation to determine procedural appropriateness sua sponte. *See Johannsen v. Pay Less Drug Stores N.W., Inc.*, 918 F.2d 160, 161 (Fed. Cir.1990). Both the merits and procedure are therefore issues before the court on appeal.

Although the $26,981 riding on the outcome of the appeal may be dwarfed by the other monetary provisions of the settlement agreement, this amount is not a token or arbitrary sum introduced for the purpose of manufacturing a controversy. It represents the entirety of the jury award for patent infringement, which Datamars would have been legally obligated to pay to Avid if the '326 patent were not held unenforceable.

For these reasons, we conclude that there remains a live controversy between the parties on the issue of unenforceability of the '326 patent, and that this court has jurisdiction to decide the case under 28 U.S.C. § 1295(a)(1). We now turn to the merits of the issues presented.

## II. Inequitable Conduct

■ A party may show inequitable conduct by producing clear and convincing evidence of (1) material prior art, (2) knowledge chargeable to the patent applicant of prior art and its materiality, and (3) the applicant's failure to disclose the prior art to the PTO with intent to mislead. *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 (Fed.Cir.1987). Information is material if there is a "substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." *J.P. Stevens & Co. v. Lex Tex Ltd.*, 747 F.2d 1553, 1559 (Fed.Cir.1984).

■ This court reviews the ultimate determination of inequitable conduct under an abuse of discretion standard. *Kingsdown Med. Consultants Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (Fed.Cir.1988) (en banc in relevant part). The underlying findings on materiality and intent are reviewed for clear error and will not be disturbed on appeal in the absence of a "definite and firm conviction" that a mistake has been made. *Id.* at 872.

In the present appeal, Avid challenges the district court's finding that the trade show demonstration was material and that Dr. Stoddard had a duty of candor to disclose this information. Avid does not dispute on appeal that Dr. Stoddard withheld the information with specific intent to deceive the PTO for the purposes of obtaining a patent. We thus turn to the issues of materiality and duty of candor.

### A. Materiality

In evaluating materiality, this court typically refers to the definition provided in 37 C.F.R. § 1.56, by which the PTO promulgated the duty of disclosure. *See Astrazeneca Pharm. LP v. Teva Pharm. USA*, 583 F.3d 766, 773 (Fed.Cir.2009). Information is material where a reasonable examiner would find it important to a determination of patentability. *Id.*

■ On appeal, Avid argues that the district court's finding of materiality was clearly erroneous because Dr. Stoddard's trade show demonstration related to a precursor product that did not contain all of the elements of the '326 patent claims. Avid's arguments against materiality focus on the fact that a jury was presented with the trade show information and still found the patent not invalid. Avid concludes that the jury must have found that the trade show demonstrations were not § 102(b) prior art. Such arguments, how-

ever, confuse the concepts of "material" and "invalidating." We have often held that a reasonable examiner may find a particular piece of information important to a determination of patentability, even if that piece of information does not actually invalidate the patent. *See Praxair, Inc. v. ATMI, Inc.,* 543 F.3d 1306, 1314–15 (Fed. Cir.2008) (holding that similar prior art that did not meet all of the patent's claim limitations was nonetheless material); *Up-john Co. v. Mova Pharm. Corp.,* 225 F.3d 1306, 1312 (Fed.Cir.2000); *Molins PLC v. Textron, Inc.* 48 F.3d 1172, 1179–80 (Fed. Cir.1995).

The district court found that sales demonstrations would be important to a determination of patentability under § 102(b). *See* 35 U.S.C. § 102(b) ("the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States"). The district court found that the precursor product, while not invalidating, reflected the closest prior art, and thus was highly material to patentability. We hold that the district court's analysis of materiality is not clearly erroneous.

### B. Duty of Candor

PTO Rule 56, codified at 37 C.F.R. § 1.56, imposes on all individuals associated with the filing and prosecution of a patent application a duty of candor and good faith in dealing with the PTO during the period of examination of a patent application. 37 C.F.R. § 1.56(a). The duty of candor includes a duty to disclose to the PTO all information known to each individual that is material to the issue of patentability. *Id.* This information includes prior sale or public use of the invention one year or more before the filing date of the application. *See* 37 C.F.R. § 1.56(b). Thus, to have a duty to disclose information to the PTO, an individual must (1) be associated with the filing and prosecution of a patent application such that he owes a duty of candor to the PTO, and (2) know that the information is question is material. *Id.* § 1.56(a).

For purposes of identifying who owes a duty of candor to the PTO, Rule 56 defines "individual[s] associated with the filing or prosecution of a patent application" as (1) each named inventor, (2) each attorney or agent that prepares or prosecutes the application, and (3) every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor or assignee. 37 C.F.R. § 1.56(c). Individuals other than the attorney, agent, or inventor, who are "substantively involved in the preparation or prosecution of the application," may comply with their duty of candor by disclosing known material information to one of the attorney, agent, or inventor. 37 C.F.R. § 1.56(d).

If an individual who is substantively involved in the preparation or prosecution of an application fails to comply with his duty of candor, then that individual's misconduct is chargeable to the applicant for the patent, and the applicant's patent is held unenforceable. *Molins,* 48 F.3d at 1178; *FMC Corp.,* 835 F.2d at 1415 n. 8. In this case, it is undisputed that Dr. Stoddard is not an inventor of the '326 patent, or an attorney or agent who prepared the '326 patent application. Thus, whether Dr. Stoddard owed a duty of candor to the PTO, such that his misconduct would be chargeable to Avid (the applicant for the '326 patent), depends on whether he was an individual who was "substantively involved in the preparation or prosecution of the application" and "associated with the inventor or assignee." 37 C.F.R. § 1.56(c)(3).

■ What constitutes "substantive[ ] involve[ment] in the preparation or prosecution of the application," the issue on which this case turns, has not previously been addressed by this court. We read "substantively involved" to mean that the involvement relates to the content of the application or decisions related thereto, and that the involvement is not wholly administrative or secretarial in nature. *See* Manual of Patent Examining Procedures § 2001.01 (8th ed., rev.2, May 2004).

■ In this case, the district court made the following findings of fact with respect to inequitable conduct:

> 1) that Avid was aware of the consequences of selling or offering to sell its reader and tag before filing the '326 patent application, 2) that Avid attempted to file the '326 patent application in advance of the 102(b) date, *i.e.* within one year after its first sales, but failed, and 3) that Avid intentionally withheld evidence of such sales from the PTO in an effort to deceive the PTO and secure allowance of the '326 patent.[1]

*Inequitable Conduct Order* at 7. Based on these findings, the court concluded that Avid acted with deceptive intent during prosecution of the '326 patent. *Id.* at 8.

■ In support of its inequitable conduct finding, the district court also made several findings related specifically to Dr. Stoddard. *Id.* Based on these findings, the district court concluded that Dr. Stoddard was "substantively involved" within

the meaning of 37 C.F.R. § 1.56(c)(3), such that he owed a duty of candor to the PTO.

The district court's fact findings related to Dr. Stoddard include: the nature of his position as president and founder of Avid, that Avid is a closely held company, and that Stoddard hired the inventors to reduce his encrypted chip concept to practice. *Id.* These facts establish that Dr. Stoddard was associated with the inventors of the '326 patent and with the assignee, Avid, in accordance with the latter requirement of § 1.56(c)(3).

With respect to the first requirement of § 1.56(c)(3), requiring that the individual be substantively involved in the preparation or prosecution of the application, the district court found that Dr. Stoddard was "involved in all aspects of the company's operation, from marketing and sales to research and development." *Inequitable Conduct Order* at 8. Dr. Stoddard's involvement in "all aspects" of Avid, including its research and development, contributes to a reasonable inference that he was also involved in the preparation of the patent application relating to that research. That this fact would contribute to such an inference is especially reasonable here, since the '326 patent was directed to the system that fulfilled Dr. Stoddard's personal mission and the purpose for which his company was created.

The district court also cited two communications related to Dr. Stoddard's substantive involvement in patent matters. *See* Def. Trial Ex. # 27 and Def. Trial Ex.

---

1. The district court's use of "Avid" in these findings is not entirely clear because only individuals, rather than corporations such as Avid, owe a duty of candor to the PTO. *Exergen Corp. v. Wal–Mart Stores, Inc.,* 575 F.3d 1312, 1328 (Fed.Cir.2009); Manual of Patent Examining Procedures § 2001.01 (explaining that "the duty applies only to individuals, not to organizations"). Accordingly, only individuals can breach that duty and give rise to a finding of inequitable conduct. *Id.* Although the district court opinion mentions a few different individuals, it appears that all of its inequitable conduct conclusions with respect to "Avid" refer to the conduct of Dr. Stoddard that is imputed to Avid. *See Avid Identification Sys. Inc. v. Crystal Import Corp.,* 2007 WL 2901415, No. 2:04–CV–183, slip op. at 8 (E.D.Tex. Sept. 28, 2007) ("*Inequitable Conduct Order* ").

#251. One communication was from an inventor named in the '326 patent and contained content for a European patent application. Dr. Stoddard was one of two recipients of this communication, the other being the European prosecuting attorney. The European patent application was the international phase of the '326 patent application. The other communication was a note from the same inventor to Dr. Stoddard advising him to check with Avid's European patent attorney before demonstrating any of Avid's technology, as it might affect Avid's patent rights in Europe.

The district court discussed these documents and found that they also contributed to an inference that Dr. Stoddard was substantively involved in patent matters related to the identification chip system. The documents related to the European filing refer to the same subject matter as the '326 patent, and preparations for both patent applications were underway at roughly the same time. Given the nature and content of these communications, and the district court's findings with respect to Dr. Stoddard's role in the company, the inference that Dr. Stoddard was similarly involved in the '326 patent application is reasonable and the finding of substantive involvement is not clearly erroneous.

Additionally, the district court determined that Dr. Stoddard's testimony at trial was not credible, his memory of facts was suspiciously selective, and he refused to acknowledge certain incontrovertible events.[2] *See Inequitable Conduct Order* at 4. The district court's findings with respect to Dr. Stoddard's lack of credibility as a witness cast doubt on Dr. Stoddard's assertion that he did not understand the claimed technology and was not involved in the preparation of the '326 patent application.

Our conclusion that the district court's duty of candor analysis was not clearly erroneous is reinforced by our own review of the entire record and relevant case law, which reveals sufficient reason to uphold the district court's judgment. *Cf. Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs. Ltd.*, 394 F.3d 1348, 1354 (Fed.Cir. 2005) ("While the district court indeed provided little explicit support for its finding of intent, it is well established that, as an appellate tribunal, we review judgments, not opinions. We therefore focus our review on whether there is sufficient evidence in the record to sustain the judgment of intent to deceive the PTO." (citing *Black v. Cutter Labs.*, 351 U.S. 292, 297, 76 S.Ct. 824, 100 L.Ed. 1188 (1956); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540 (Fed.Cir.1983); *Consol. Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 814 (Fed.Cir.1990) ("An appellate court need not close its eyes to the record where ... there is a way clearly open to affirm the district court's action.")).

Dr. Stoddard was personally responsible for the disputed prior art demonstrations. He was in contact with at least one of the inventors during the preparation of the '326 patent application regarding patent-related matters. He was also advised by that inventor to check with a patent attorney before disclosing information about Avid's technology to the public. He signed the small entity status affidavit shortly before the application was filed. These facts lend further support to the inference that Dr. Stoddard was substantively involved in preparations for filing the application, and demonstrate that Dr. Stoddard

---

2. For example, Dr. Stoddard was Avid's main fact witness on the issue of patent validity, and the district court explicitly discredited the portions of his testimony relevant to the validity of the '326 patent under § 102(b).

spoke for Avid in representations to the PTO.

Although Dr. Stoddard did not contribute enough to the patentable features of the claims to be considered an inventor, the functionality of the system described in the '326 patent was his idea. The inventors he hired were specifically instructed to reduce his idea to practice. Dr. Stoddard's inclusion on substantive communications related to the preparation of the European counterpart to the '326 patent application further support the more general conclusion that he was substantively involved in preparation of the patent application covering the system he conceived.

Under the terms of Rule 56, the PTO does not assign a duty of candor to persons not associated with a patent application, or to those involved only in a ministerial capacity. Such persons would not be in a position to appreciate that their conduct or knowledge might be relevant to the PTO.[3] The district court did not clearly err in determining that Dr. Stoddard was not such an exempt person. Indeed, to accept Avid's argument that a person such as Dr. Stoddard owes no duty of candor would allow intentional deception by the types of people most likely to have knowledge of § 102(b) prior art, i.e., those on the commercial side of patented product development.

The dissent errs by conflating Rule 56's requirements of substantive involvement and knowledge that the undisclosed information is material. According to the dissent, the "substantively involved" has a knowledge requirement; the person must be "able to assess the materiality of any information [that person] may know or discover." Dissent at 978. The dissent's proposed definition fails, however, because that is not what Rule 56 says. Involvement and knowledge are separate inquiries under Rule 56, located in separate sections (subsections (c) and (a), respectively) and serving different purposes. Under § 1.56(c), we ask whether a person is substantively involved with the preparation or prosecution of a patent application in order to determine whether that person is associated with the filing and prosecution of a patent application, and thus owes a duty of candor to the PTO under § 1.56(a). Nothing in § 1.56(c)(3) requires, as the dissent suggests, the individual be "able to assess the materiality of any information [he] may know or discover" in order to be substantively involved. Dissent at 978. Rather, what a person knew or should have known only matters after he is found to be "associated with the filing and prosecution of a patent application," such as by being substantively involved. *Id.* § 1.56(a).

In other words, a finding that an individual was "substantively involved in the preparation or prosecution" of a patent application only determines that the individual owed a duty of candor to the PTO. Whether the individual involved in the alleged misconduct owed a duty of candor to the PTO is merely a threshold inquiry in the inequitable conduct analysis. Once a court finds that the individual had a duty of candor, the court must proceed to the

---

3. Our holding does not automatically extend the duty of candor to all individuals who contact one of the inventors or sign the small entity affidavit. Nor does our holding extend the duty generally to all individuals on the commercial side of product development. We simply hold that the district court may properly consider a variety of factors, such as an individual's position within the company, role in developing or marketing the patented idea, contact with the inventors or prosecutors, and representations to the PTO in deciding whether that individual is "substantively involved" within the meaning of § 1.56(c)(3) and thus owes a duty of candor to the PTO.

dual prongs of materiality and deceptive intent, to determine whether that duty was violated. This subsequent analysis, in particular the deceptive intent inquiry, encompasses the concerns raised by the dissent. If an individual is unable to assess the materiality of the information at issue, then he would lack the deceptive intent required to find that he committed inequitable conduct.[4] Therefore, the dissent's main objection to our "substantive involvement" test is misplaced.

Based on the district court's findings and on the entirety of the evidence of record, we hold that the district court did not abuse its discretion in rejecting Avid's argument that Dr. Stoddard owed no duty of candor to the PTO. Dr. Stoddard withheld material information regarding his sales demonstrations of products that reflected the closest prior art to the claims of the '326 patent. Dr. Stoddard acted with deceptive intent. Dr. Stoddard's actions are imputed to Avid, the patent holder. We therefore affirm the district court's judgment that Avid's '326 patent is unenforceable due to inequitable conduct.

*AFFIRMED*

### COSTS

Each party shall bear its own costs.

LINN, Circuit Judge, concurring-in-part and dissenting-in-part.

I am pleased to join Parts I and IIA of the majority opinion concluding that there remains a live controversy between the parties on the issue of unenforceability of U.S. Patent No. 5,235,326 ("the '326 patent") and affirming the district court's materiality ruling. I respectfully dissent, however, from Part IIB affirming the dis-

trict court's ruling that the duty of candor required by 37 C.F.R. § 1.56(c)(3) applies to Dr. Stoddard.

This case involves the application of 37 C.F.R. § 1.56 ("Rule 56"), a rule adopted by the United States Patent and Trademark Office ("PTO") that places on defined individuals a duty of candor and good faith, including a duty of disclosure, in dealing with the PTO during the period of examination of a patent application. 37 C.F.R. § 1.56(a). These individuals include: (1) each named inventor; (2) each attorney or agent who prepares or prosecutes the application; and (3) "[e]very other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application." 37 C.F.R. § 1.56(c). Since Dr. Stoddard is not a named inventor or an attorney or agent associated with the filing of the '326 patent, the question presented in this case turns on the application of Rule 56(c)(3), which, as the majority recognizes, has never been explicitly addressed by this Court.

Rule 56(c)(3) lists two criteria that must be met before imposing a duty of disclosure on an individual. First, the individual must be "substantively involved in the preparation or prosecution of the application." 37 C.F.R. § 1.56(c)(3). Second, the individual must be "associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application." *Id.* I agree with the majority that Dr. Stoddard was associated with the inventors of the '326 patent and that the second prong of Rule 56(c)(3) is met in this case. Where I part company with the majority is the conclusion that Dr. Stoddard was "substantively involved in

---

**4.** As occurred here, the district court may find the same evidence probative of whether a person was "substantively involved" and whether that person acted with deceptive intent. The inquiries, however, are distinct.

the preparation or prosecution of the [′326 patent] application" as required by the first prong of Rule 56(c)(3).

We review a district court's determination of inequitable conduct under an abuse of discretion standard. *Kingsdown Med. Consultants Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (Fed.Cir.1988) (en banc). "We will not substitute our judgment for that of the trial court in relation to the discretionary ruling of inequitable conduct unless the appellant establishes that the ruling is based upon clearly erroneous findings of fact or a misapplication or misinterpretation of applicable law or that the ruling evidences a clear error of judgment on the part of the district court." *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1379 (Fed.Cir.2001). In my view, the district court both misapplied Rule 56(c)(3) and clearly erred in finding that Dr. Stoddard was "substantively involved in the preparation or prosecution of the application." Accordingly, I would reverse the determination that the ′326 patent is unenforceable due to inequitable conduct.

### I. Who Owes the Duty of Candor

The majority correctly recognizes that the duty of candor is codified at 37 C.F.R. § 1.56 and includes the duty to disclose to the PTO all information that is material to the issue of patentability known to certain individuals. 37 C.F.R. § 1.56(a). As the majority further notes, the question in this case is to whom does the duty of candor extend under the language "every other person who is substantively involved" in Rule 56(c)(3)?

The majority holds that a district court may consider an "individual's position within the company, role in developing or marketing the patented idea, contact with the inventors or prosecutors, and representations to the PTO" when deciding whether an individual is "substantively involved," regardless of whether those factors relate to the person's awareness of the merits of the application in question or engagement in any specific activity relating to that application. Majority Op. at 974-75, 975-76, 977 n. 4. The majority goes even further to extend the duty generally to "those on the commercial side of patented product development," because they are "the types of people most likely to have knowledge of § 102(b) prior art." Majority Op. at 976. With all due respect, I find no basis in the rule or in any policy for such an expansive reading of Rule 56(c)(3).

The obligation imposed by the duty of candor is to disclose to the PTO information "material to patentability." 37 C.F.R. § 1.56(a). Because one cannot assess whether information is "material to patentability" without knowledge of the technical details or legal merits of an application, it should be self-evident that when Rule 56(c)(3) talks about persons who are "substantively involved" it is referring to those persons who are both (1) engaged in the preparation or prosecution of an application and (2) sufficiently apprised of the technical details or legal merits of the application as to be able to assess the materiality of any information they may know or discover as the application is prepared or prosecuted. This naturally excludes not only the "typists, clerks, and similar personnel who assist with the application" in a non-substantive way as described in the Manual of Patent Examining Procedure ("MPEP") § 2001.01, but also corporate officers, managers, employees, and all other individuals who are neither aware of the technical details or legal merits of the application nor engaged in the preparation or prosecution thereof. Simply having a general interest or even a financial interest in the invention or a gen-

eral awareness of the application is not enough.

This interpretation does not improperly import into Rule 56(c)(3) the knowledge component from materiality, as suggested by the majority. Majority Op. at 976. Instead, it recognizes that Rule 56(c)(3) uses the phrase "substantively involved." The use of the word "substantive[ ]" limits the set of individuals who have a duty to disclose to those who possess a specific understanding of the substance of the application. This has nothing to do with the question of whether any particular piece of information is material, but relates to the separate question of whether a person is substantively involved; i.e., sufficiently apprised of the details of the application as to be in a position to make that assessment. Reading the separate parts of Rule 56 in harmony is not improperly conflating them, as the majority suggests.

The majority reads "substantive[ ]" to mean that the involvement "relates to the content of the application or decision related thereto, and that the involvement is not wholly administrative or secretarial in nature." Majority Op. at 974 (citing MPEP § 2001.01 (8th ed., rev.2, May 2004)). Such an expansive interpretation is nowhere suggested in the cited section of the MPEP or anywhere in Rule 56. The PTO could easily have written a rule as broad as that set forth by the majority. However, the PTO purposefully limited the duty of disclosure to material information in order to limit the submission of irrelevant and cumulative information that could overwhelm the PTO and obscure potentially important disclosures. *See* Duty of Disclosure, 42 Fed.Reg. 5589 (Jan. 28, 1977) (" 'Relevant' is replaced by 'material' because the latter term connotes something more than a trivial relationship."); MPEP § 2001 (8th ed., rev.2, May 2004) ("There is no duty to submit information which is

not material to the patentability of any existing claim."). By extension, the PTO also limited the duty to those individuals in a position to determine what disclosures are material-those substantively involved in the preparation or prosecution of the application.

While I do not quibble about the majority's characterization of this as a threshold inquiry, calling it such does not justify writing "substantively" out of the rule and lowering the threshold to extend the duty to disclose to everyone having some relationship to the invention or application no matter how peripheral or tangential it may be to the substance of the application. The majority's interpretation places on persons who are not in a position to assess materiality an obligation to disclose information the relevance of which they have no way of determining. The effect is either to encourage the filing of information regardless of its materiality, just to be on the safe side, or to widen the net of inequitable conduct that may be cast by accused infringers after the fact in litigation. Neither result is desired or warranted and cannot be justified on the rationalization that Rule 56(c)(3) is simply an innocuous threshold inquiry. Indeed, this court has held that the identity of the individual accused of inequitable conduct is essential to the determination of whether the patent can be found unenforceable. *See Exergen Corp. v. Wal–Mart Stores, Inc.,* 575 F.3d 1312, 1330 (Fed.Cir.2009) ("The pleading, however, provides no factual basis to infer that any specific individual, who owed a duty of disclosure in prosecuting the '685 patent, knew of the specific information in the [prior art] patents that is alleged to be material to the claims of the '685 patent.").

Finally, the majority suggests that intent should solve the concern I have expressed. Majority Op. at 976-77. With all due respect, that suggestion is premised

on circular reasoning that ignores Rule 56(c)(3) entirely. If intent was all that mattered, there would be no need to be concerned at all about who had the duty to disclose.

## II. Dr. Stoddard's Involvement

In this case, there is no evidence that Dr. Stoddard was substantively involved in the preparation or prosecution of the application for the '326 patent. Specifically, there is no evidence to even suggest that Dr. Stoddard had any knowledge of the technical details or legal merits of the application for the '326 patent while it was being prepared or prosecuted. I find it significant that no document or testimony shows that Dr. Stoddard participated in any inventor meeting with patent counsel, received a draft of the application prior to filing, or received any draft response of an office action to the PTO during prosecution or was otherwise apprised of the technical details or legal merit of the application. In fact, Robert Malm, the prosecuting attorney of the '326 patent, testified that Dr. Stoddard was *not* substantively involved in the preparation or prosecution of the patent. J.A. 14100, 14104 (Malm's testimony stating that he did not have any conversations with Dr. Stoddard about patent prosecution matters and that no individual at Avid reviewed responses before they were filed with the PTO).

The majority cites two communications as evidence sufficient to support the district court's inference that Dr. Stoddard was substantively involved in the '326 application. Majority Op. at 974-75. Neither of these documents actually related to the '326 application. The first memo, addressed to Dr. Stoddard from a named inventor of the '326 patent, mentioned only the possible effect of Avid sales on a European patent application. The second memo, which indicated that Dr. Stoddard

was provided a copy, was addressed to a patent attorney who was never involved in the '326 patent application and included new material for an unspecified patent application. This memo did not give any indication that it was in any way related to the '326 patent application. These documents do not support the conclusion that Dr. Stoddard had any awareness of the details or merits of the '326 application.

The majority incorrectly points to Dr. Stoddard's involvement in Avid's research and development as a factor indicating that he was substantively involved in the preparation of the patent application relating to that research. Majority Op. at 974-75. Dr. Stoddard's research activities are simply evidence that Dr. Stoddard was "associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application." 37 C.F.R. § 1.56(c)(3). Because it is the actual substance of the application that defines what constitutes "material" information that the individual must disclose to the PTO, Rule 56 requires more than just this association. *See* 37 C.F.R. § 1.56(b)(1), (c)(3).

The majority also ascribes significance to the fact that Dr. Stoddard was personally responsible for certain prior art demonstrations. Majority Op. at 975-76. However, this fact does not contribute to a finding that Dr. Stoddard was substantively involved in the patent application. While employees who perform product demonstrations may well be the individuals most likely to have knowledge of prior art, that knowledge, in itself, does not give rise to a duty of disclosure to the PTO. *See Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.,* 464 F.3d 1339, 1346 (Fed.Cir.2006) (affirming district court's refusal to find inequitable conduct based on the failure of an employee scien-

tist—not a named inventor—to disclose a prior art reference noting that he was "only tangentially involved in prosecution" of the patent). Unless such an individual also has knowledge of the technical details or legal merits of the patent application and is engaged in the preparation or prosecution thereof, he is not bound by Rule 56. Moreover, while the district court found Dr. Stoddard's testimony on the issue of prior art demonstrations was less than candid, that neither shows that he was involved in the '326 patent application nor demonstrates that whatever involvement he may have had was substantive in any way.

Finally, Dr. Stoddard's signature on the small entity status affidavit, declaring that Avid is a small business concern eligible for reduced patent application fees, provides no evidence that he had any knowledge of the substantive details contained in the patent application. The small entity status document relates only to information about the corporation and not to anything material to patentability.

The majority states that Dr. Stoddard is substantively involved in the application for the '326 patent based on the entirety of the evidence in the record. However, as noted above, none of the individual pieces of evidence the majority cites as the basis for this finding—Dr. Stoddard's role in the company, the two memos regarding patent prosecution, the small entity status affidavit, Dr. Stoddard's involvement in the product demonstrations, or Dr. Stoddard's lack of credibility at trial—show that Dr. Stoddard was even peripherally involved with the actual application at issue. Simply combining the evidence does not change the fact that there is nothing in the record showing that Dr. Stoddard had anything at all to do with the application for the '326 patent.

For the foregoing reasons, it is my view that the evidence does not support a finding that Dr. Stoddard was substantively involved in the preparation or prosecution of the '326 patent. He was neither engaged in the preparation or prosecution of the '326 patent application nor sufficiently apprised of its technical details or legal merits to allow him to assess what information would be considered material to its patentability. Because the district court misapplied Rule 56(c)(3) and clearly erred in extending the duty of disclosure to Dr. Stoddard, I would reverse the finding that the '326 patent is unenforceable due to inequitable conduct.